NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| SAMIRA GHANIME, | : | |
| Plaintiff, | : | Civil Action No. 21-4260 (SRC) |
| v. | : | |
|  | : | OPINION |
| COSTCO WHOLESALE, | : | |
| Defendant. | : | |

**CHESLER**, District Judge

    This matter comes before the Court on a motion for summary judgment filed by Defendant Costco Wholesale ("Costco"). Plaintiff Samira Ghanime ("Ghanime") opposes the motion. The Court, having considered the papers filed by the parties, proceeds to rule on the motion without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will deny Costco's motion for summary judgment.

    **I.**    **Background**

    This matter concerns an alleged slip and fall in the parking lot of the Wayne, New Jersey Costco location. Ghanime alleges she slipped and fell on an icy condition while exiting her car in the Costco parking lot on February 19, 2019, around 4:30pm. (Compl. ¶ 3; Pl.'s Statement of Material Facts Not in Dispute ("Pl. Facts") ¶ 6). The parties agree no precipitation fell on the day of the slip. (Pl. Facts ¶ 7; Def.'s Statement of Material Facts Not in Dispute ("Def. Facts") ¶ 2). However, Ghanime asserts there was a pile of snow on a concrete area in front of the parking spaces. (Pl. Facts ¶ 8). In her deposition, Ghanime described the icy condition as black ice that looked "watery." (Ghanime Depo. 81:25-82:4). Costco's Manager on Duty at the time of the

incident, Carlos Silva, described the condition as a six-by-one-foot patch of black ice. (Silva Depo. 13:3-6). During his deposition, he used seemingly contradictory terms to describe the ice, saying it had "just started melting from . . . hours earlier" and that it was "fresh." (Silva Depo. 17:21-18:1). When asked to clarify, he said he did not know how long the icy condition had been present, but he noted that it was "a little wet," and "not totally frozen." (Silva Depo. 18:6-8, 19:5-8).

There is no evidence that suggests Costco was actually aware of the icy condition before Ghanime's slip. The parties agree Costco generally had four to seven employees working in the parking lot at any given time, who would look out for hazards as part of their duties. In addition, the manager on duty would periodically walk the perimeter of the parking lot similarly looking for hazards. (Pl. Facts ¶ 13; Def. Facts ¶ 16-18). Ghanime asserts Costco had not taken any countermeasures to alleviate the risk of ice, by either calling upon a contractor who provided snow and ice remediation services to Costco or by salting the parking lot with salt that was kept on-premises. (Pl. Facts ¶ 14-15).

Ghanime filed this action in New Jersey Superior Court on February 8, 2021, alleging Costco was negligent. Costco remove the action to this Court on March 5, 2021. (ECF No. 1). On February 28, 2023, Costco moved for summary judgment, asserting Ghanime had failed to establish it had actual or constructive notice of the icy condition in the parking lot. (ECF No. 21). Specifically, Costco argues Ghanime has no evidence of actual notice, and she cannot establish constructive notice because she has no evidence of how long the icy condition existed in the lot.

In opposition to Costco's motion, Ghanime argues she has presented sufficient evidence for a jury to conclude Costco had constructive notice of the icy condition. Specifically, Ghanime advances a theory that snow from the nearby mounds melted and refroze while the temperature

2

was near or below freezing, hours before the slip occurred. In support of this theory, Ghanime submits a meteorological report which provides a timeline of the weather leading up to the slip. The report states there was 1.5 to 2 inches of snowfall about a week before the slip. This was followed by freezing rain two nights before the slip, as well as rain and sleet the preceding afternoon. (Pl. Exh. A at 1-2). The report also asserts the temperature was above freezing the day before the slip, with a high of 42 degrees Fahrenheit, which could cause piled snow to melt. Then, the evening before the slip, the temperature fell to 20 degrees. Finally, the temperature rose slowly the day of the slip, peaking at 35 degrees in the afternoon. (Pl. Exh. A at 2).

**II.     Discussion**

   A. Legal Standard

The Court evaluates Walmart's motion for summary judgment under Federal Rule of Civil Procedure 56(a). Rule 56(a) provides that a "court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is genuine if a reasonable jury could return a verdict for the nonmoving party and material if, under the substantive law, the dispute would affect the outcome of the suit. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Although the burden of proof rests initially with the party moving for summary judgment, when a motion is made and supported," the nonmoving party must establish the existence of a genuine issue as to a material fact in order to defeat the motion. Jersey Cent. Power & Light Co. v. Lacey Twp., 772 F.2d 1103, 1109 (3d Cir. 1985).

To create a genuine issue of material fact, the nonmoving party must come forward with sufficient evidence to allow a jury to find in its favor at trial. Gleason v. Norwest Mortg., Inc.,

243 F.3d 130, 138 (3d Cir. 2001), overruled on other grounds by Ray Haluch Gravel Co. v. Cent. Pension Fund of the Int'l Union of Operating Eng'rs and Participating Emp'rs, 571 U.S. 177 (2014). The nonmoving party cannot rest on mere allegations; instead, it must present actual evidence that creates a genuine issue as to a material fact for trial. Anderson, 477 U.S. at 248. When considering a motion for summary judgment, a district court "must view the evidence 'in the light most favorable to the opposing party.'" Tolan v. Cotton, 572 U.S. 650, 657 (2014) (quoting Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). A court may not make credibility determinations or otherwise weigh the evidence. Anderson, 477 U.S. at 255; see also Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004).

This action is based in diversity, so the Court will apply the substantive tort law of the State of New Jersey. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In New Jersey, negligence requires showing "(1) a duty of care, (2) a breach of that duty, (3) proximate cause, and (4) actual damages." Brunson v. Affinity Fed. Credit Union, 199 N.J. 381, 400 (2009). A plaintiff bears the burden of proving each of these elements.

"Business owners owe to invitees a duty of reasonable or due care to provide a safe environment for doing that which is within the scope of the invitation." Nisivoccia v. Glass Gardens, Inc., 175 N.J. 559, 563 (2003). Reasonable care requires business owners to "discover and eliminate dangerous conditions," "maintain the premises in safe condition," and "avoid creating conditions that would render the premises unsafe." Id. The duty of care does not require a business owner to eliminate every conceivable danger. Rather, liability depends on whether the business owner had actual or constructive knowledge of the dangerous condition. Prioleau v. Ky. Fried Chicken, Inc., 434 N.J. Super. 558, 570 (App. Div. 2014). A business owner has actual

4

notice of a dangerous condition when it or its employees actually become aware of the condition. Id. at 571. Constructive notice is imputed to a business owner if a dangerous condition exists for a long enough period such that it would be discovered and corrected by a reasonably diligent business owner. Parmenter v. Jarvis Drug Store, Inc., 48 N.J. Super. 507, 510 (App. Div. 1957).

    B.  Constructive Notice

Ghanime presents sufficient evidence to establish constructive notice. Specifically, a reasonable jury could accept Ghanime's theory that piled snow melted and refroze on the ground hours before the slip. Ghanime and Silva testified that there were piles of snow close to where she slipped. (Ghanime Depo. 78:13-79:1; Silva Depo. 9:2-10). Ghanime submits a meteorological report which asserts the temperature was above freezing the day before the slip, dropped significantly below freezing the night before the slip, and rose to slightly above freezing the afternoon of the slip. (Pl. Exh. A at 2). It is common sense that the piled snow may have melted and refroze the night or the morning before the slip, because the temperatures where below freezing at that time. See Coe-Lee v. Park, No. L-5634-05, 2009 WL 1766680, at *1 (N.J. Super. Ct. App. Div. June 24, 2009) ("It is common knowledge that in snow-melt conditions, refreezing occurs when the temperature drops overnight.").

Critically, Ghanime's meteorological report offers a chronological account of the temperature leading up to the slip, enabling the jury to evaluate when the icy condition likely formed. To show constructive notice, Ghanime must establish the condition existed long enough that it would have been discovered and corrected by a reasonable business owner. Parmenter, 48 N.J. Super. at 510. The meteorological report offers a chronological account of the rise and fall of the temperature. A jury can take the information in the report and reasonably conclude the icy

condition formed during the freezing hours of the night or early morning preceding the slip. This places the formation of the condition hours before Ghanime slipped at 4:30pm, which is sufficient to establish constructive notice. See Yazujian v. PetSmart, No. 13-06202, 2016 WL 4408817, at *8-9 (D.N.J. Aug. 16, 2016) (collecting cases concerning how long "a dangerous condition must exist for a defendant to have constructive knowledge" while acknowledging the inquiry "depends on the characteristics of . . . the dangerous condition" and is not tied to an "exact length of time").

The formation of the icy condition is only part of the analysis. Ghanime must be able to show that Costco should have discovered and corrected the condition in the time between the formation of the condition and Ghanime's slip. Parmenter, 48 N.J. Super. at 510. Costco has systems in place to search for hazards in its parking lot. Silva testified four to seven employees, tasked, among other things, with looking for hazards, were always in the parking lot. Additionally, the manager on duty would regularly walk the perimeter of the lot looking for hazards. (Silva Depo. 19:9-20:13). Silva estimates there would have been a Costco employee in the area of the incident every few minutes. (Silva Depo. 19:23-20:9). However, Ghanime asserts various facts which would enable a jury to conclude Costco should have discovered the icy condition notwithstanding Costco's procedures. Ghanime asserts the condition was relatively large, at one-by-six feet. (Silva Depo. 13:3-6). As discussed above, she asserts the condition was present for several hours. Additionally, she shows evidence the condition was in an area at the front of the parking lot and was regularly passed by employees. (Silva Depo. 19:9-20:13). Furthermore, Ghanime asserts facts that suggest Costco should have been on heightened alert to the risk of ice in its parking lot. There is testimony that there were piles of snow in the lot. (Ghanime Depo. 78:13-79:1; Silva Depo. 9:2-10). Per the meteorological report, the temperature, while varied

6

throughout the day of the slip, generally stayed near freezing.  (Pl. Exh. A).  A jury could conclude that Costco should have been on high alert for icy conditions, such that it should have been able to discover a one-by-six patch of ice, frozen for several hours, near the front of the parking lot.

Ghanime also presents evidence establishing Costco has systems in place to mitigate the risk of ice formation had they discovered the condition.  First, Silva testified Costco kept salt in a 55-gallon drum, which could be spread by Costco employees to mitigate the risk of ice.  (Silva Depo. 20:14-22).  Second, Ghanime submits evidence that Costco contracted with a third-party service which would provide snow and ice remediation services upon verbal notice.  (Pl. Exh. G).  Ghanime asserts there is no evidence that Costco used either of these countermeasures on the day of the incident.  (Pl. Facts ¶ 16).  This evidence establishes that Costco could have corrected the icy condition had it discovered the ice before Ghanime's slip.

Therefore, Ghanime's evidence, in the aggregate, is sufficient to enable a jury to conclude that Costco had constructive notice of the icy condition because it existed for a long enough period that Costco should have discovered and corrected it.  Parmenter, 48 N.J. Super. at 510.

Costco asserts various arguments to the contrary, none of which are persuasive.  First, Costco asserts the factual proposition that the icy condition formed shortly before the slip.  Principally, Costco relies on Silva's testimony that the condition looked "fresh" and Ghanime's testimony that the condition looked "watery."  (Silva Depo 17:21-18:1; Ghanime Depo. 81:25-82:4).  But Costco has simply created a factual dispute, one which must be resolved by a jury.  Because there is a genuine dispute as to when the icy condition formed—a fact material to establishing constructive notice—summary judgment is not available to Costco.  Anderson, 477 U.S. at 248.

Next, Costco argues Ghanime cannot establish constructive notice without precisely identifying when the icy condition formed. But that is more than the law requires. Rather Ghanime must present evidence that it existed for "a long enough period such that it would be discovered and corrected by a reasonably diligent business owner." Parmenter, 48 N.J. Super. at 510. She does not need to present evidence the condition existed for a specific number of hours. Rather, she must present evidence that the condition existed at least long enough that a Costco employee should have discovered and corrected it. Put another way, Ghanime does not need to establish the maximum amount of time the condition existed as long as she can establish a minimum amount of time which would enable Costco to discover and correct the condition. Ghanime has met this burden. As discussed above, Ghanime's meteorological report provides a chronological account of the temperatures leading up to the slip. It asserts there were freezing temperatures the night before the slip, which rose above freezing in the afternoon. From the report, a reasonable jury could conclude the icy condition formed the night or the morning before the slip, and not in the afternoon.

In its reply brief, Costco challenges the admissibility of the meteorological report. Costco raises arguments under Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), and asserts the report is a "net opinion." Costco also notes that the report draws on data recorded some distance from the Costco location and that the report lacks any analysis of the location's elevation and its impact on the freezing point of water. The Court will not address the admissibility of the report when it is first raised in a reply brief to a summary judgment motion. See In re Paoli R.R. Yard PCB Litig., 916 F.2d 829, 854 (3d Cir. 1990) (reversing summary judgment based on the exclusion of evidence without "provid[ing] the plaintiffs with sufficient process for defending their

8

evidentiary submissions"). Costco is free to challenge the admissibility of the report in a proper motion in limine. If it succeeds in doing so, it may file another summary judgment motion. For now, it is sufficient to conclude that the report has a sufficient basis in meteorological data so that it may be useful to a jury. Therefore, Ghanime may rely on it for summary judgment purposes. See Fed. R. Civ. P. 56(c)(2).

Costco cites various black ice slip and fall cases where the plaintiffs failed to meet their evidentiary burden to establish constructive notice. However, none of the evidentiary deficiencies in Costco's cited cases are present here. First, the plaintiff in Tameru v. W-Franklin, L.P., 350 F. App'x 737 (3d Cir. 2009), submitted a meteorological report that merely asserted the weather conditions at the time of the slip were "consistent with the presence of black ice." Id. at 739 (internal quotations and emphasis omitted). That plaintiff failed to show evidence that "the ice was observable for [a] significant period of time prior to the accident." Id. at 740. As discussed above, Ghanime has made that showing here. Next, Costco cites Marim v. Newark Pub. Schs., No. A-5538-17T-1, 2019 WL 6873637 (N.J. Super. Ct. App. Div. Dec. 17, 2019). There, a plaintiff attempted to establish constructive notice of an icy condition by providing meteorological data covering the twenty-four hours preceding the fall, during which time the temperature did not drop below freezing. The plaintiff also testified that the ice looked "new." Id. at *1. The court granted summary judgment because there was no evidence establishing the ice existed long enough to establish constructive notice: "[i]n fact, the evidence showed the opposite." Id. at *4. Here, Ghanime provides meteorological evidence from which a jury could conclude the icy condition formed hours before the slip and Costco should have discovered it. Next, Costco cites Krupka v. Cherry Hill Towers, LLC, No. A-4570-10T1, 2012 WL 1836179 (N.J. Super. Ct. App. Div. May

9

22, 2012). There, the trial judge granted a directed verdict because there was no evidence establishing actual or constructive notice, and specifically no evidence of how long the icy condition had been present. Id. at *4. Here, the meteorological report supports the conclusion that the ice had formed hours before the slip. Finally, Costco cites Blair v. Asbury Park Hous. Auth., No. A-0500-04T5, 2005 WL 2738405 (N.J. Super. Ct. App. Div. Oct. 25, 2005). This case is inapposite because it depends on statutory notice provisions that only apply to public entities. Id. at *2 (citing N.J.S.A. 59:4-2). Putting that infirmity aside, the court affirmed summary judgment in part because the plaintiff's expert report was a net opinion and unsupported by the underlying meteorological data. Id. at *5. Here, the meteorological report is supported by the underlying data.

### III.   Conclusion

For the foregoing reasons, the Court will deny Costco's motion for summary judgment. An appropriate order will be filed.

    s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: July 11, 2023